**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

FLORA ARMENTA, *individually and on behalf of others similarly situated*,

Plaintiff,

v.

STAFFWORKS, LLC,

Defendant.

Case No. 17-cv-00011-BAS-NLS

**ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION, STRIKE CLASS CLAIMS, AND STAY LITIGATION**

**[ECF No. 6]**

Presently before the Court is Defendant Staffworks, LLC's motion to compel Plaintiff Flora Armenta's individual claims to arbitration, strike her class claims, and stay the case pending the outcome of arbitration. (ECF No. 6.) Plaintiff opposes. (ECF No. 9.)

The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). For the following reasons, the Court **DENIES** Defendant's motion to compel arbitration, strike class claims, and stay litigation.

## I. BACKGROUND

Plaintiff Flora Armenta sought job placement through Defendant Staffworks, LLC—a staffing agency that places applicants with various client companies. (Milana-Slater Decl. ¶¶ 3, 6, ECF No. 6-2.) Prior to being assigned to work for a client company, applicants visit Defendant's office to fill out initial paperwork and participate in a brief interview to determine the applicant's skillset and desired employment. (*Id*. ¶¶ 3–4.)

When Plaintiff visited Defendant's office, she received and signed a one-page Mandatory Arbitration Agreement ("Agreement"). (Milana-Slater Decl. ¶ 7, Ex. A.) The Agreement states, in pertinent part:

> **MANDATORY ARBITRATION AGREEMENT**
>
> In connection with my employment at StaffWorks, LLC ("STAFFWORKS"), . . . I agree that any dispute or controversy which would otherwise require or allow [or] resort to any court or other governmental dispute resolution forum, between myself and STAFFWORKS (or its owners, partners, directors, officers, employees and parties affiliated with its employee benefit and health plans) arising from, related to, or having relationship or connection whatsoever with my seeking employment with, employment by, or other association with STAFFWORKS, whether based on tort, contract, statutory, or equitable law, or otherwise, (including claims for discrimination under the Fair Employment Housing Act) shall be submitted to and determined by binding arbitration in conformity with the procedures of the California Arbitration Act . . . .

(*Id*.)

Plaintiff later commenced this putative class and collective action against Defendant under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., and California labor law. (Compl. ¶¶ 56–92, ECF No. 1.) At the heart of Plaintiff's claims is the allegation that Defendant failed to pay Plaintiff and those similarly situated, resulting in the underpayment of wages in violation of the FLSA and California labor law. (*Id*. ¶ 5.) Based on the Agreement, Defendant now moves to compel arbitration

of Plaintiff's individual claims, strike her class claims, and stay this action pending the outcome of arbitration. (ECF No. 6.)

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") applies to disputes involving contracts that touch upon interstate commerce or maritime law. 9 U.S.C. § 1; *see also Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109, 119 (2001); *Yahoo! Inc. v. Iversen*, 836 F. Supp. 2d 1007, 1009 (N.D. Cal. 2011). It reflects a "national policy favoring arbitration," *Preston v. Ferrer*, 552 U.S. 346, 349 (2008), and emphasizes that valid arbitration agreements must be "rigorously enforce[d]" according to their terms, *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. ---, 133 S. Ct. 2304, 2309 (2013).

Thus, the FAA commands that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The second clause, known as the FAA's "savings clause," permits arbitration agreements to be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)); *see also Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1158 (9th Cir. 2013).

The court's role under the FAA is limited to determining (1) whether a valid arbitration agreement exists and, if so, (2) whether the scope of the agreement encompasses the dispute at issue. *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "If a party seeking arbitration establishes these two factors, the court must compel arbitration." *Farrow v. Fujitsu Am., Inc.*, 37 F. Supp. 3d 1115, 1119 (N.D. Cal. 2014) (citing *Chiron Corp.*, 207 F.3d at 1130); *see also* 9 U.S.C. § 4 ("[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an

order directing the parties to proceed to arbitration in accordance with the terms of the agreement.").

## III. ANALYSIS

### A. Under the National Labor Relations Act, Agreements That Prevent Employees from Engaging in Concerted Activity Are Illegal.

In its motion to compel arbitration, Defendant argues the Agreement is enforceable and this Court should not only compel Plaintiff's individual claims to arbitration, but also strike her class allegations. (Mot. 3:14–12:21.) Plaintiff opposes, asserting that the Agreement is unenforceable under *Morris v. Ernst & Young, LLP*, 834 F.3d 975, 979, 984–85 (9th Cir. 2016), *cert. granted*, 137 S. Ct. 809 (2017). (Opp'n 2:13–28.)

In *Morris v. Ernst & Young*, the Ninth Circuit considered whether an employer violates the National Labor Relations Act ("NLRA") by requiring employees to sign an agreement containing a concerted action waiver. 834 F.3d at 979. "This 'concerted action waiver' required employees to (1) pursue legal claims against Ernst & Young exclusively through arbitration and (2) arbitrate only as individuals and in 'separate proceedings.'" *Id.* Consequently, "employees could not initiate concerted legal claims against the company in any forum—in court, in arbitration proceedings, or elsewhere." *Id.*

To determine whether the concerted action waiver was enforceable, the Ninth Circuit examined the NLRA's provisions regarding concerted activity. *Morris*, 834 F.3d at 981. Section 7 of the NLRA provides that "[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. This "right of employees to act together"—concerted activity—"is the essential, substantive right established by the NLRA." *Morris*, 834 F.3d at 979

(emphasis omitted); *see also Eastex, Inc. v. NLRB*, 437 U.S. 556, 564–66 (1978) (discussing Section 7). Further, under Section 8 of the NLRA, "[i]t shall be an unfair labor practice for an employer . . . to interfere with, restrain, or coerce employees in the exercise of" this right. *See* 29 U.S.C. § 158. "Section 8 has long been held to prevent employers from circumventing the NLRA's protection for concerted activity by requiring employees to agree to individual activity in its place." *Morris*, 834 F.3d at 983 (emphasis omitted).

In applying these two sections, the Ninth Circuit reasoned that a labor-related civil action—such as the class and collective action before it—is concerted activity under Section 7 of the NLRA. *Morris*, 834 F.3d at 981–82. But the "separate proceedings" clause in Ernst & Young's arbitration agreement prevented "concerted activity by employees in arbitration proceedings, and the requirement that employees only use arbitration prevent[ed] the initiation of concerted legal action anywhere else." *Id.* at 984. Therefore, the separate proceedings clause interfered with concerted activity in violation of Section 8 of the NLRA, and it could not be enforced. *Id.*

Thus, the Ninth Circuit held that an NLRA violation arises, regardless of the forum, "so long as the exclusive forum provision is coupled with a restriction on concerted activity in that forum." *Morris*, 834 F.3d at 989. In other words, given that employees have the right to pursue employment claims collectively, an agreement violates the NLRA when employees are (1) limited to pursuing claims in only one forum and (2) prevented from acting in concert in that forum. *See id*. at 983–84.

In this case, the Mandatory Arbitration Agreement limits Plaintiff to pursuing employment claims in only one forum: arbitration. The Court must therefore determine whether the Agreement also prevents Plaintiff from acting in concert with other employees in that forum, i.e., participating in class arbitration. *See Morris*, 834 F.3d at 983–84.

//

//

**B. The Agreement Does Not Permit Class Arbitration.**

**1. This Court, Not the Arbitrator, Decides Whether Class Arbitration Is Permitted.**

Before analyzing whether the Agreement allows employees to act in concert in arbitration, the Court must consider whether the parties have delegated this determination to the arbitrator. Although federal policy favors arbitration agreements, the Supreme Court "has made clear that there is an exception to this policy: The question [of] whether the parties have submitted a particular dispute to arbitration, *i.e.*, the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (emphasis omitted) (quoting *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986)); *accord Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011). "Clear and unmistakable evidence of an agreement to arbitrate arbitrability 'might include . . . a course of conduct demonstrating assent . . . or . . . an express agreement to do so.'" *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016) (quoting *Momot*, 652 F.3d at 988).

For example, in *Yahoo! Inc. v. Iversen*, 836 F. Supp. 2d 1007, 1009 (N.D. Cal. 2011), the parties' arbitration agreement incorporated the rules of the American Arbitration Association ("AAA"). These rules included the AAA Supplementary Rules for Class Arbitration, which provide that the arbitrator will decide "whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class." *Id.* at 1010–12. Thus, the court found that the parties clearly and unmistakably delegated to the arbitrator the issue of whether class arbitration is available by incorporating the rules of the AAA into the arbitration agreement. *Id.* at 1012; *see also Accentcare, Inc. v. Jacobs*, No. 15-03668-JSW, 2015 WL 6847909, at *4 (N.D. Cal. Nov. 9, 2015) (finding that "the question of arbitrability may be, and was, delegated to the arbitrator by the incorporation of the AAA rules"); *accord Levy*

*v. Lytx, Inc.*, No. 16-cv-03090-BAS(BGS), 2017 WL 2797113, at *6 (S.D. Cal. June 28, 2017).

Here, there is no evidence that the parties have "clearly and unmistakably" delegated to the arbitrator the question of arbitrability of class claims. *See Momot*, 652 F.3d at 988. Unlike the arbitration clause in *Yahoo!*—and as Defendant notes in its motion to compel arbitration—the Agreement "contains no specific language delegating any threshold question of arbitrability to the arbitrator, nor does it contain a reference to any arbitration rules which do so." (Mot. 11:16–17.)[1] There is also no indication that the parties' course of conduct demonstrates their assent to arbitrate whether class arbitration is permitted. Therefore, this Court finds no clear and unmistakable evidence that the parties intended the arbitrator to decide whether the agreement permits class arbitration.[2] Accordingly, the Court will make this determination.

**2. There Is No Contractual Basis for Class Arbitration.**

Although the FAA evinces a strong presumption in favor of arbitration, the Act "does not confer a right to compel arbitration of any dispute at any time." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989). The FAA imposes a basic precept that arbitration "is a matter of consent, not

[1] The Agreement does provide that any dispute "shall be submitted to and determined by binding arbitration in conformity with the procedures of the California Arbitration Act." (Milana-Slater Decl. Ex. A.) "While the parties have agreed to arbitrate in conformity with the procedures of the California Arbitration Act, and while parties may elect to follow state procedures in lieu of the FAA's procedures, the procedures the California Arbitration Act spells out do not specifically address the question of class arbitration availability." *See Sandquist v. Lebo Auto., Inc.*, 1 Cal. 5th 233, 250 (2016) (internal quotation marks and citations omitted).

[2] Another exception to the judicial determination of arbitrability arises when a contract contains an arbitration clause and the plaintiff challenges the validity of the contract as a whole, as opposed to arguing specifically the arbitration clause is unenforceable. *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1000 (9th Cir. 2010). This exception is inapplicable because Plaintiff is specifically challenging an arbitration provision, as opposed to challenging the validity of a broader agreement that also contains an arbitration provision—such as an employment agreement. *See id.* at 1000–01.

coercion." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010) (quoting *Volt Info. Scis.*, 489 U.S. at 479); *see also Yahoo! Inc.*, 836 F. Supp. 2d at 1009 ("Arbitration is a matter of contract, and the FAA places arbitration agreements 'on an equal footing with other contracts.'" (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)).

Accordingly, when deciding whether to enforce arbitration agreements, courts and arbitrators must "give effect to the contractual rights and expectations of the parties." *Volt Info. Scis.*, 489 U.S. at 479. "[I]t follows that a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Stolt-Nielsen*, 599 U.S. at 684 (emphasis in original); *see also Oxford Health Plans LLC v. Sutter*, 569 U.S. ---, 133 S.Ct. 2064, 2066 (2013) ("An arbitrator may employ class procedures only if the parties have authorized them."). Thus, if the "arbitration agreement is silent as to whether class arbitration is permitted, it should not be presumed that the parties agreed to submit to class arbitration." *Parvataneni v. E*Trade Fin. Corp.*, 967 F. Supp. 2d 1298, 1302 (N.D. Cal. 2013) (finding that the arbitration agreement did not provide for class arbitration when there was no evidence that the parties intended to include class arbitration in the terms of their agreement), *order vacated on other grounds on reconsideration at* 2014 WL 12611301 (N.D. Cal. Nov. 7, 2014).

For instance, in *Stolt-Nielsen*, the parties "stipulated that the arbitration clause was 'silent' with respect to class arbitration." 559 U.S. at 668. "[T]he term 'silent' did not simply mean that the clause made no express reference to class arbitration," but rather that "there's been no agreement that has been reached on that issue." *Id.* at 668–69. Thus, because the parties stipulated there was no contractual basis for authorizing class arbitration, the Supreme Court held they could not "be compelled to submit their dispute to class arbitration." *Id.* at 687.

The Ninth Circuit reached the same result in *Morris* for a different reason. There, Ernst & Young's concerted action waiver expressly required employees to

"arbitrate only as individuals and in 'separate proceedings.'" *Morris*, 834 F.3d at 979. Consequently, there was not a contractual basis for concluding the parties agreed to permit class arbitration, but rather the opposite—they affirmatively agreed to forbid class arbitration. *See id.* at 979, 989.

The Mandatory Arbitration Agreement signed by Plaintiff makes no reference to class proceedings. There is no "separate proceedings" clause like that encountered in *Morris*. But at the same time, unlike *Stolt-Nielsen*, the parties have not stipulated the agreement is "silent"—as that term is used in *Stolt-Nielsen*—on whether class arbitration is available.

The result is still the same. There is no "contractual basis" for concluding the parties agreed to permit class arbitration. *See Stolt-Nielsen*, 599 U.S. at 684. In addition to the Agreement not mentioning class proceedings, neither party submits evidence that the parties expected or intended class arbitration to be authorized. If anything, the language in the Agreement suggests a presumption of individual arbitration. It identifies that "any dispute or controversy which would otherwise require or allow [or] resort to any court or other governmental dispute resolution forum, *between myself and STAFFWORKS* . . . shall be submitted to and determined by binding arbitration." (Milana-Slater Decl. ¶ 7, Ex. A (emphasis added).) Accordingly, the Court finds class arbitration is not available because there is no contractual basis for concluding the parties agreed to authorize it. *See Stolt-Nielsen*, 599 U.S. at 684.

### C. Under the NLRA and *Morris*, the Arbitration Agreement Is Illegal and Unenforceable.

The Court's analysis above brings this case within the scope of the Ninth Circuit's decision in *Morris*. The Mandatory Arbitration Agreement (1) limits Plaintiff to pursuing claims only in arbitration and (2) does not allow her to act in concert in that forum because the Agreement does not permit class arbitration.

Nonetheless, Defendant advances several arguments for why it believes this case is distinguishable from *Morris*, all of which the Court finds unconvincing.

Initially, Defendant argues that the holding in *Morris* is limited to instances where employers attempt to circumvent the NLRA via an express concerted action waiver. (Reply 1:27–2:3.) Then, in attempting to distinguish this case, Defendant states: "Without putting too fine a point on it, [Defendant] is not seeking the enforcement of a concerted action waiver, because no such waiver exists here. [Defendant] is simply asking the Court to enforce the parties' agreement and require [Plaintiff] to arbitrate her claims." (*Id.* 2:12–15.) This is a hollow distinction. Defendant is seeking to not only compel arbitration, but also strike Plaintiff's class claims. Thus, even if the Agreement does not contain an express concerted action waiver, Defendant is seeking to obtain the same result that was forbidden in *Morris*—an order (1) limiting Plaintiff to arbitration and (2) precluding her from engaging in concerted activity in arbitration. *See* 834 F.3d at 979, 983–84. In other words, Defendant's motion is an unlawful attempt to circumvent the NLRA.

The National Labor Relations Board's decisions are in accord.[3] It "has repeatedly held that a mandatory arbitration agreement is unlawful if, despite its silence regarding class or collective actions, the employer has used the agreement to preclude employees from pursuing class or collective employment related claims in any forum." *Select Temps., LLC*, 31-CA-157821, 2016 WL 4772318 (N.L.R.B. Div. of Judges Sept. 13, 2016). For example, in *Countrywide Financial Corp.*, 362 N.L.R.B. No. 165 (Aug. 14, 2015), the Board found that by filing a motion to compel individual arbitration, the respondents effectively applied an illegal construction of the arbitration agreement that required the employees to resolve all employment

[3] When examining the NLRA's provisions, the "Board's reasonable interpretations of the NLRA command deference." *Morris*, 834 F.3d at 981; *see also N.L.R.B. v. City Disposal Sys. Inc.*, 465 U.S. 822, 829 (1984) ("[T]he task of defining the scope of § 7 'is for the Board to perform in the first instance as it considers the wide variety of cases that come before it.'" (quoting *Eastex*, 437 U.S. at 568)).

claims through individual arbitration. "By taking steps to enforce the Agreement in Federal district court when the employees filed their collective claims . . . the respondents maintained and enforced the Agreement in violation of Section 8(a)(1)." *Countrywide Fin. Corp*., 362 N.L.R.B. No. 165, at *6; *see also D. R. Horton, Inc.*, 357 N.L.R.B. 2277, 2288 (2012) ("[E]mployers may not compel employees to waive their NLRA right to collectively pursue litigation of employment claims in *all* forums, arbitral and judicial."); *c.f. Martin Luther Mem'l Home, Inc.*, 343 N.L.R.B. No. 75 (Nov. 19, 2004) (acknowledging that a workplace rule that does not explicitly restrict protected activity can be unlawful if the rule is applied to restrict the exercise of Section 7 rights).

Similarly here, by moving to compel individual arbitration and strike Plaintiff's class claims, Defendant is seeking to enforce a construction of the Agreement that violates Section 8 of the NLRA. Denying Plaintiff the opportunity to pursue her class claims would implicate the antithesis of Section 7's substantive right to pursue concerted work-related legal claims. Thus, the Agreement as sought to be enforced is illegal under Section 8 for the same reasons articulated in *Morris* and the Board's decisions discussed above. Accordingly, the Court is unpersuaded by Defendant's initial argument that the outcome in this case should be different than *Morris* simply because the Agreement does not contain an express concerted action waiver.

In addition, Defendant cites to *Stolt-Nielson* and *Johnmohommadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1076 (9th Cir. 2014), to argue that Plaintiff could waive her right to engage in concerted activity. (Reply 2:4–8.) But both these cases are distinguishable. *Stolt-Nielsen* involved an arbitration agreement in the context of an antitrust suit alleging owners of international parcel tankers engaged in price fixing. 559 U.S. at 667. The case therefore did not implicate employees' right under the NLRA to engage in concerted activity—the lynchpin of this case and *Morris*.

As for *Johnmohommadi*, that decision analyzed an arbitration agreement that was voluntary. 755 F.3d at 1077. The Ninth Circuit noted that the plaintiff "had the right to opt out of the arbitration agreement, and had she done so she would be free to pursue this class action in court." *Id.* Thus, the court reasoned that the plaintiff, "[h]aving freely elected to arbitrate employment-related disputes on an individual basis, without interference from [the employer]," could not claim the agreement violated the NLRA. *Id.* The same cannot be said here. Defendant's policy required Plaintiff to come into its office to complete "the initial paperwork," including the "**MANDATORY ARBITRATION AGREEMENT**." (Milana-Slater Decl. ¶¶ 6–7, Ex. A.) Further, nothing in the Agreement indicates Plaintiff had the right to opt out. (*See id.* Ex. A.) *See also Rivera v. Saul Chevrolet, Inc.*, No. 16-CV-05966-LHK, 2017 WL 1862509, at *4 (N.D. Cal. May 9, 2017) (Koh, J.) ("Neither party has presented any evidence here that Plaintiff was provided an opportunity to opt out of the Arbitration Agreement . . . . Nor does the Arbitration Agreement itself contain a procedure for opting out."). Accordingly, *Johnmohommadi* is also distinguishable. *See Morris*, 834 F.3d at 982 n.4 (explaining that "there was no § 8 violation in *Johnmohammadi* . . . because the employee there could have opted out of the individual dispute resolution agreement and chose not to").

Last, Defendant cites to an unpublished Ninth Circuit decision, *Eshagh v. Terminix International Co.*, 588 F. App'x 703, 704 (9th Cir. 2014), to support its belief that this Court can strike Plaintiff's class claims and compel individual arbitration. (Reply 2:16–20.) The Court is again unconvinced. *Eshagh* is not binding precedent on this Court. *See* 9th Cir. R. 36-3. Moreover, *Eshagh* predates the decision in *Morris* and does not discuss Section 7 or Section 8 of the NLRA. *Morris*, 834 F.3d at 982–83.

Accordingly, Plaintiff's action falls within the scope of *Morris*, and the Court finds Defendant's attempts to distinguish this case unpersuasive. The Agreement is therefore unenforceable. *See* 29 U.S.C. § 158; *Morris*, 834 F.3d at 990; *Pataky v.*

*Brigantine, Inc.*, No. 17-cv-00352-GPC-AGS, 2017 WL 1682681, at *8 (S.D. Cal. May 3, 2017) (Curiel, J.) (denying motion to compel individual arbitration based on *Morris*); *accord Ross v. P.J. Pizza San Diego, LLC.*, No. 16-cv-02330-L-JMA, 2017 WL 1957584, at *2 (S.D. Cal. May 11, 2017) (Lorenz, J.).

## IV. CONCLUSION & ORDER

In sum, Section 7 of the NLRA affords Plaintiff the right to engage in concerted activity, and Section 8 forbids Defendant from interfering with this right. Based on *Morris*, an employer violates Section 8 when it limits employees to pursuing employment claims in one forum and precludes them from acting in concert in that forum. Although there is no express concerted action waiver in the Agreement, Defendant's attempt to compel arbitration and strike class claims is an attempt to limit Plaintiff to arbitration and prevent her from acting in concert in arbitration. To do so would violate her Section 7 rights. Because Defendant is seeking to enforce the Agreement in violation of Section 8, this Court finds the Agreement to be illegal and unenforceable.

In light of the foregoing, the Court **DENIES** Defendant's motion to compel arbitration, strike class claims, and stay litigation (ECF No. 6).

**IT IS SO ORDERED.**

**DATED: July 21, 2017**

Cynthia Bashant

**Hon. Cynthia Bashant**
**United States District Judge**